**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JERIEL EDWARDS,

    Plaintiff - Appellant,

v.

CITY OF MUSKOGEE, OKLAHOMA, a
municipal corporation; STEVEN
HARMON; BOBBY LEE; GREG
FOREMAN; DILLON SWAIM,

    Defendants - Appellees.

No. 20-7000
(D.C. No. 6:18-CV-00347-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Jeriel Edwards appeals from a district-court order granting summary judgment to

City of Muskogee Police Officers Greg Foreman, Steven Harmon, Bobby Lee, and Dillon

Swaim on his excessive-force claims under 42 U.S.C. § 1983.  Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Shortly after 10 p.m. on October 25, 2016, Officer Foreman was on patrol in his vehicle when he was flagged down by a man concerned about a car stopped in a restaurant's driveway. According to the man, the car had been there for about an hour and the driver was "just out of it." Aplt. App. at 113 (internal quotation marks omitted).

Officer Foreman drove up behind the car, the front of which was "sticking partially out into the street." *Id.* at 98. He exited his patrol vehicle, approached the car's driver-side door, and asked the driver several times, "How's it going," "Let me see your I.D.," and "Can you talk?" *Id.* at 113-14 (internal quotation marks omitted). The driver was barely responsive. For example, Officer Foreman had to instruct him several times to "put [the] car in park" before he complied. *Id.* at 98.

Officer Foreman believed, based on his training and experience, that the driver was under the influence of drugs or alcohol. In particular, he suspected that the driver

---

[1] In determining whether qualified immunity applies, "we ordinarily accept the plaintiff's version of the facts—that is, the facts alleged." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks omitted). But those "facts must find support in the record." *Id.* (internal quotation marks omitted). Thus, if the plaintiff's "version of the facts is blatantly contradicted by the record, so that no reasonable jury could believe it, then we should not adopt that version of the facts." *Id.* (internal quotation marks omitted). In recounting the background facts of this case, we rely on video footage showing Edwards's encounter with police, the transcript of that encounter, the officers' affidavits and reports, and the state-court records. In opposing summary judgment in the district court, Edwards submitted no evidence. Thus, to the extent Edwards asserts a factual version that conflicts with this universe of evidence, we do not adopt his version.

"was under the influence of PCP because [of] the way he was acting." *Id.* at 136.[2] He

soon recognized the driver as Edwards, whom he had encountered previously. He

radioed the dispatcher, asking for a record check on Edwards. Edwards found his wallet

and gave his ID to Officer Foreman. Throughout their interaction, Edwards "kept putting

his hands in and out of his pants pockets." *Id.* at 98.

Officer Foreman decided to arrest Edwards for driving under the influence. He

ordered him to get out of the car and to stop putting his hands in his pockets. Officer

Harmon arrived on the scene and approached to assist.

Officer Foreman opened the driver-side car door while Edwards unbuckled his

seat belt and placed his wallet on the console. Edwards still had difficulty following

Officer Foreman's instructions. When Edwards stood up out of the car, Officer Foreman

told him to face away with his hands behind his back. Edwards initially faced away, but

both officers had trouble handcuffing Edwards, as he did not keep his arms behind him.

Officer Harmon repeated several times, "Hands behind your back." *Id.* at 116 (internal

quotation marks omitted). Officer Foreman radioed for assistance.

From this point forward, it would take officers almost four minutes to handcuff

Edwards, who is 6'1" tall and weighed 225 pounds. Based on his training and

experience, Officer Foreman thought it was "safer to take a non-compliant suspect who is

---

[2] "Officers at the Muskogee Police Department are instructed that non-compliant suspects under the influence of PCP are extremely dangerous because they are unpredictable, have enhanced physical strength and endurance, and are impervious to pain." Aplt. App. at 106. They are also told that such individuals can experience "excited delirium when they are involved in extended fights or struggles, and officers are instructed to get them into custody as quickly as possible." *Id.*

actively resisting to the ground when attempting to subdue and handcuff [him]." *Id.* at 99. He therefore ordered Edwards to "get on the ground." *Id.* at 116 (internal quotation marks omitted). When Edwards did not comply, the officers forced him to the ground, where they continued to struggle to handcuff him, attempting to pull his arms behind his back while he faced downward and kept his arms in front of him. Officer Foreman said that he "could not control . . . Edward's [sic] hands and arms," as "[h]e was extremely strong." *Id.* at 99.

Officer Harmon similarly thought that Edwards possessed "extraordinary strength." *Id.* at 103. He delivered "three closed fist punches to [Edwards's] rib area in the attempt to get [him] to comply that had no effect." *Id.* at 144. Edwards asked, "Why're you punching me?" *Id.* at 117 (internal quotation marks omitted). The officers continued ordering Edwards to put his hands behind his back.

Officer Harmon positioned himself briefly on Edwards's back while he continued trying to pull Edwards's arms behind him. Edwards kept asking, "Why're you punching me, sir?" *id.* at 117 (internal quotation marks omitted), but the videos do not indicate that any further blows were delivered. The officers told him, "Stop resisting" and "Quit resisting." *Id.* at 118 (internal quotation marks omitted). Edwards responded, "I ain't resisting," although he did not comply with their demands. *Id.* (internal quotation marks omitted). During the struggle Officer Foreman "could smell an odor [he] associated with persons under the influence of PCP." *Id.* at 99.

Unable to handcuff Edwards, Officer Harmon said, "Okay . . . taze him." *Id.* at 118 (ellipsis in original, internal quotation marks omitted). As Edwards was lying in the

4

parking lot, Officer Foreman "deployed [his] Taser into . . . Edwards['s] back." *Id.* at 99. When that failed to elicit compliance, he tried "stapling"—that is, "mov[ing] the connecting wires onto . . . Edwards['s] calf[ ] in an effort to obtain neuromuscular incapacitation." *Id.* Edwards yelled, "Hey!!" and momentarily stopped struggling as Officer Harmon worked near his head to secure his arms. *Id.* at 118 (internal quotation marks omitted). But Edwards resumed struggling with Officer Harmon while Officer Foreman repeatedly directed him to "[p]ut [his] hands behind [his] back," *id.* at 118 (internal quotation marks omitted), and "cycl[ed] the [Taser] device through 2 five second cycles" *id.* at 99. Three times, Edwards responded, "My hands behind my back!" *Id.* at 118 (internal quotation marks omitted). But each time his hands were still in front of him or underneath him as he attempted to rise to his knees. Officer Foreman commented that the Taser was not affecting Edwards, and Officer Harmon agreed

At this point, Edwards had risen to his hands and knees. Attempting to stand up, he reached around the back of Officer Harmon's neck and asked, "Why're you doing this shit to me?" *Id.* at 118 (internal quotation marks omitted). Edwards was soon on his feet but bent forward as Officer Harmon tried to push his upper body toward the ground. Officer Foreman fell forward but was able to push Edwards backward onto his buttocks, against the driver-side compartment of Edwards's car and the open car door.

Another officer arrived and joined the effort. Officer Foreman told Edwards twice more to stop resisting. Edwards said he was not resisting, but he grabbed the arm of Officer Foreman, who struck Edwards's arm with his flashlight and yelled "Let go of me!!!" *Id.* at 119 (internal quotation marks omitted).

5

Lt. Lee arrived as the other officers were engaged with Edwards at his open car door. He "slid in behind [Edwards, who was in a seated position,] and applied a bilateral neck restraint."[3] *Id.* at 106. Within about 20 seconds, Officer Foreman was able to handcuff one of Edwards's wrists.

More officers began arriving, including Officer Swaim. He "grabbed [Edwards's] other arm and helped the other officers force [Edwards's] other wrist into . . . the handcuffs." *Id.* at 109. One of the officers ordered Edwards to "Relax . . . relax . . . relax!" *Id.* at 119 (ellipses in original; internal quotation marks omitted).

Edwards was soon fully handcuffed and the officers began backing away. Two officers remained with him, however, holding him in place. Officer Harmon asked, "Anybody need EMS?" *Id.* at 120 (internal quotation marks omitted). Officer Foreman responded, "We need EMS for [Edwards]." *Id.* (internal quotation marks omitted). Edwards asked, "What are you guys doing?" *Id.* (internal quotation marks omitted). Lt. Lee called for EMS [Aplt. App. at 142] and another officer told Edwards he was going to jail for having "fought the police . . . intoxicated." *Id.* (ellipsis in original; internal quotation marks omitted).

---

[3] This type of "restraint momentarily disrupts the carotid [artery] blood flow to the brain" in order to make a person "lose consciousness for a few seconds." Aplt. App. at 106. Edwards claims that Officer Foreman also applied a neck restraint; and Officer Foreman indicated in his police report that after striking Edwards with his flashlight, he "eventually had to put [Edwards] in a neck restraint in an attempt to control him." *Id.* at 136. But even if both Officer Foreman and Lt. Lee used a neck restraint, it would not change the outcome of this appeal. There is no evidence that the neck restraint was applied in an improper manner or that Edwards suffered any long-term injury from the restraint; nor has Edwards argued that use of this type of restraint is per se excessive force.

6

Officer Swaim sat Edwards up and "noticed a strong chemical smell." *Id.* at 109. An inventory search of Edwards's car revealed two Xanax tablets and a bottle containing a liquid that smelled like PCP.

EMS arrived and evaluated Edwards, determining that his "vitals were fine." *Id.* at 142. Officer Foreman then took Edwards to the hospital for a blood test and to get "medically cleared" for jail. *Id.* at 106. The hospital admitted Edwards because he had become "unresponsive." *Id.* at 136. As Officer Foreman later learned, Edwards had suffered a broken nose during his arrest.

Edwards was charged in state court with driving under the influence of drugs (a felony), resisting an officer (a misdemeanor), and possessing a controlled dangerous substance (two felony counts—PCP and Xanax). Edwards pleaded no contest[4] and was sentenced.

In 2018, Edwards filed this civil-rights action against the City of Muskogee and Officers Foreman, Harmon, Lee, and Swaim. He claimed that (1) the individual officers were liable for using excessive force under the Fourth Amendment, as he had provided no resistance; and (2) the City was liable for excessive force under Oklahoma's Constitution.

The district court dismissed Edwards's claim against the City, and the case proceeded against the individual defendants, who moved for summary judgment on the basis of qualified immunity. The district court granted the motion, concluding that

---

[4] Although the Amended Judgment and Sentence states that Edwards entered a guilty plea, that statement appears to be a mistake.

Edwards had not shown the violation of a constitutional right or that the asserted right was clearly established.

## DISCUSSION
### I. Standards of Review

Ordinarily, "[w]e review a grant of summary judgment de novo." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

But when a defendant asserts a qualified-immunity defense, our review "differs from that applicable to review of other summary judgment decisions." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018) (internal quotation marks omitted). "A defendant's motion for summary judgment based on qualified immunity imposes on the plaintiff the burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation." *Burke v. Regalado*, 935 F.3d 960, 1002 (10th Cir. 2019) (internal quotation marks omitted). Only if the "plaintiff meets this heavy burden" must "the defendant . . . prove that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law." *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015).

### II. Excessive Force

The Fourth Amendment's reasonableness standard governs "[a]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen." *Graham v. Connor*, 490 U.S.

8

386, 395 (1989) (emphasis and internal quotation marks omitted).  Thus, we employ "a

standard of objective reasonableness, judged from the perspective of a reasonable officer

on the scene, rather than with 20/20 vision of hindsight." *Pauly v. White*, 874 F.3d 1197,

1215 (10th Cir. 2017) (internal quotation marks omitted). "The right to make an arrest . . .

necessarily carries with it the right to use some degree of physical coercion . . . to effect

it." *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotations

marks omitted).  But to assess the propriety of the coercion under specific facts,

 we "balance the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the importance of the governmental interests alleged to

justify the intrusion," *id.* (internal quotation marks omitted), paying "careful attention to

the facts and circumstances of each particular case, including [1] the severity of the crime

at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or

others, and [3] whether he is actively resisting arrest or attempting to evade arrest by

flight," *Graham*, 490 U.S. at 396 (emphasis and internal quotation marks omitted).[5]

---

[5] Although § 1983 liability must ordinarily be "traceable to a defendant-official's own individual actions," *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (internal quotation marks omitted), an "individualized analysis" is not required in an excessive-force case where, as here, "all Defendants actively participated in a coordinated use of force," and they were "engaged in a group effort." *Est. of Booker v. Gomez*, 745 F.3d 405, 421-22 (10th Cir. 2014).  Although Lt. Lee and Officer Swaim were not engaged with Edwards for the same amount of time as Officers Foreman and Harmon, a jury might find that they all participated in a coordinated use of force against Edwards to handcuff him.  Thus, "we will consider the officers' conduct in the aggregate." *Pauly*, 874 F.3d at 1214.

### A. Severity of Edwards's Suspected Crime

Officer Foreman suspected that Edwards was driving under the influence of PCP. Although "minor non-violent offenses clearly weigh against the objective need to use much force against [an arrestee]," *Mglej v. Gardner*, 974 F.3d 1151, 1168 (10th Cir. 2020), Edwards's suspected crime was a felony, which generally tilts the first *Graham* factor against the arrestee, *see Est. of Valverde ex rel. Padilla v. Dodge*, 967 F.3d 1049, 1061 n.2 (10th Cir. 2020). Moreover, while "our cases have not considered the nature of a felony in determining that it is a serious offense under the first *Graham* factor," *id.*, we note that Muskogee police officers are instructed that individuals under the influence of PCP can be extremely dangerous.

We conclude that the first *Graham* factor—severity of the crime—weighs against Edwards.

### B. Whether Edwards Posed an Immediate Threat to Officer Safety

"The second *Graham* factor, whether the suspect posed an immediate threat to the safety of the officers or others[,] is undoubtedly the most important." *Emmett v. Armstrong*, 973 F.3d 1127, 1136 (10th Cir. 2020) (internal quotation marks omitted). "[A]n officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." *Mglej*, 974 F.3d at 1168 (internal quotation marks omitted).

Here, officers employed considerable force against Edwards. They forced him to the ground, delivered three closed-fist punches to his ribs, tasered and stapled him, struck

10

him with a flashlight, and placed him in a neck restraint, all while wrestling with him to gain control of his arms and force his wrists into handcuffs. He suffered a broken nose.

Nevertheless, we cannot say the force used was unreasonable from the perspective of an officer on the scene concerned about safety. Edwards moved his hands in and out of his pockets while Officer Foreman initially interacted with him, and he ignored officers' repeated commands to put his hands behind his back. He struggled with officers, at times grabbing them and attempting to rise to his feet. He had an imposing physical stature and exhibited both incoherence and PCP-enhanced effort and imperviousness to pain. Significantly, it took multiple officers engaged in a prolonged struggle with him to place him in handcuffs.

Edwards contends that officers "did not give [him] sufficient time to obey the command to put his hands behind his back," and that "prior to the initial takedown [he] showed no sign of resistance, disobedience, or violence." Aplt. Opening Br. at 16. But the videos show Edwards moving his arms and body as Officers Foreman and Harmon first attempted to handcuff him. And during this handcuffing attempt, Officer Foreman recognized the need for assistance and called for back up. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. To the extent that Edwards claims he was "subdued" by the time Officer Harmon delivered the three closed-fist punches to his ribs, Reply Br. at 9, the record contradicts that claim.

11

We conclude that the second *Graham* factor—threat to officer safety—weighs against Edwards.

## C.        Whether Edwards Actively Resisted Arrest

Edwards characterizes his effort to avoid being handcuffed as no more than passive or minimal resistance.  For the same reasons we determined that the second *Graham* factor weighs against Edwards, we conclude that the third *Graham* factor— active resistance to arrest—also weighs against him.  The record contradicts Edwards's portrayal of limited resistance.  Officers Foreman and Harmon were unable to handcuff him even after tasing and stapling him.  Indeed, Edwards attempted to stand up while continuing to struggle with both officers.  And after a third officer joined the struggle, Edwards still managed to grab Officer Foreman by the arm.  It took several additional officers working together to force Edwards's wrists into the cuffs while Lt. Lee employed a neck restraint on Edwards before he was finally subdued.  No reasonable jury could conclude that Edwards was not actively resisting arrest from the moment Officer Foreman first tried to handcuff him until his eventual handcuffing by multiple police officers.

Because all three *Graham* factors weigh against Edwards, his excessive-force claim fails, and the defendants are entitled to summary judgment in the absence of a constitutional violation.  *See Puller*, 781 F.3d at 1196 ("Failure on either element [of the qualified-immunity analysis] is fatal to the plaintiff's claims."); *see, e.g.*, *Hinton v. City of Elwood*, 997 F.2d 774, 781-82 (10th Cir. 1993) (qualified immunity available based on

12

no constitutional violation where officers wrestled plaintiff to the ground and used a stun gun on him for "actively and openly resisting [their] attempts to handcuff him").

**CONCLUSION**

We affirm the district court's judgment.

Entered for the Court


Harris L Hartz
Circuit Judge